WILLIAM H. ELLIOTT, Appellant, *vs.* SILAS L. SECOR, and JOHN EVANS, Respondents.

1. *Practice, civil—Withdrawal of a defence pleaded.*—The right of a defendant to withdraw one of his defences at any time is unquestionable.

2. *Parol evidence as to technical terms in a deed.*—Where terms are used in a deed that require explanation to those unfamiliar with the business to which they pertain, parol evidence in regard to them is proper, although the terms are not ambiguous.

*Appeal from Clinton Circuit Court.*

*A. W. Mullins, J. E. Merryman, J. F. Harwood, and Charles Ingle,* for Appellant.

*S. H. Corn, with Wm. Henry,* for Respondents.

NAPTON, Judge, delivered the opinion of the court.

This was a suit to recover possession of a "first breaker and finisher," sometimes called a "roll machine," alleged to have been wrongfully taken and detained by defendants.

The petition contained the allegations required by the statute in regard to such actions.

The answer contained the usual formal denials of all the allegations of the petition and then proceeded to set up as a special defense, that the property in question had been, by mistake, included in a certain deed of trust, under which plaintiff had purchased, and asked that this deed be reformed and made to conform to the intention of all the parties to it. Subsequently the defendants, by leave of the court, abandoned this part of their answer, containing this special matter of defense ; and the case was tried upon the petition and its denial by answer.

The description of property conveyed by the deed of trust was as follows: "A lot of woolen machinery as follows: one set of carding machines as follows ; one first breaker and one finisher ; one spinning-jack, 160 spindles, etc., now in the town of St. Catherine in Linn County, Missouri, etc." This deed was signed by the defendants and W. P. Doak, who then lived in Cameron, and was the owner at that time of the "first breaker and finisher" sued for.

The deed was written by a lawyer, Mr. Brownlee, whose deposition was read in the case. No witnesses were examined except the plaintiff and defendants and Doak and Brownlee.

The examination of the plaintiff and defendants and Doak related chiefly to the meaning, among manufacturers, of the words "one set of carding machines," and there was no difference of opinion expressed. According to all these witnesses, who are men of experience in woolen manufacturing, a "set of carding machines," includes three pieces, one "first breaker," one finisher and a condensor. A "roll machine" consists of one first breaker and a finisher. The latter is chiefly used for making custom rolls, and is generally called a first breaker and finisher, and sometimes called a roll machine. The former is chiefly used for manufacturing cloth.

The deposition of Brownlee for the plaintiff, who drew up the deed of trust at the plaintiff's instance was to the effect that he understood that all the parties designed that the first breaker and finisher now sued for, should be included in it; that it was his intention to so include it, and that he did so include it in the enumeration of the articles conveyed, and that he also included two lots in the town of Cameron; that he drew up the paper by following a memorandum handed to him by the defendants.

This memorandum was afterwards given in evidence by the defendants and was the list of articles sold by the plaintiff to the defendants, the purchase money for which the deed of trust was made to secure. This memorandum was as follows: "One set of carding machines; one first breaker and finisher; one spinning-jack, etc., etc."

This property, thus sold by the plaintiff and bought by the defendants, was in the town of St. Catherine; but the "first breaker and finisher" sued for, had never been in that place, but was then in Cameron and owned by Doak.

After hearing the evidence the court declared the law as follows: "Although it is proper to exclude all the verbal testimony in the case, so far as it tends to vary the terms of the deed of trust in evidence, or to show the intention of the

parties thereto, at variance with the meaning of the terms of said instrument, or to show mistakes in drafting the same; yet it is proper to consider all the evidence in the case tending to show or explain what is meant or generally understood by the terms 'one set of carding machines' among and by men of experience in running and dealing in woolen machinery, and also all the evidence tending to identify the property included in the terms of said deed according to their true meaning."

Nine instructions were asked by the plaintiff, none of which were given. It is unnecessary to insert them, as they merely embodied in the shape of instructions the points now made for reversing the judgment.

The right of the defendants to abandon one of the defenses, in their plea cannot be questioned—the right to amend implies the right to abandon.' It is obvious, from the copy of the deed of trust, appended to the original answer, that the defendants were misled by an error in the copy; but whether they were so misled or not, they had an undoubted right to abandon this defense. (Boatmen's Sav. Inst. vs. Forbes, 52. Mo., 201.)

This case was tried by the court, without a jury.

The declaration of law made by the court contained the principles of law by which the court would be guided in its finding; and this declaration was clearly right and applicable to the facts in evidence.

One of the principal exceptions taken during the trial by the plaintiffs was to the admission of the memorandum of the property sold by the plaintiffs to the defendants and handed to the defendant at the time of the sale.

It will be observed that much of the evidence given in the deposition of the draftsman, Brownlee, and by the plaintiff in his examination was incompetent; but it does not seem that the plaintiff could have been at all prejudiced by this memorandum, seeing that it merely was in rebuttal of illegal testimony given by the plaintiff. This paper, in truth, is a mere copy, almost word for word, of the descriptive part of the

deed of trust, and it has a strong tendency to show that the deed was drawn after it, and of course conveyed only such articles as were named in the bill of sale.

It is stated in the bill of exceptions that the memorandum from which the deed of trust was drawn was agreed to be sent up to this court, from which I infer that this memorandum or bill of sale from plaintiff to defendant is the same memorandum furnished to the draftsman, as it is the only one in the record.

The admissibility of this evidence is, however, a point not material, for, whether admitted or excluded, the result must have been the same; and it is impossible, from the instruction or declaration of law given by the court, to say that it had any influence whatever on the verdict of the court. I incline to think that the evidence was competent, as tending to identify the property detailed in both papers.

It is clear that Mr. Brownlee, the lawyer who drew up the deed of trust, is totally mistaken in his deposition. It is probable, or rather certain, that he could not have had the deed before him, when he gave his deposition, as he was manifestly wrong in regard to the two lots which he thought were also included in the deed. He was equally sure that the two articles in suit were also inserted; but the deed, as it is copied in the record, contains nothing whatever concerning any lots, and contains only one "first breaker and finisher;" and comparing it with the bill of sale or memorandum of the articles sold by plaintiff to defendant, no other conclusion can be reached than the one to which the Circuit Court arrived.

Besides, all the property enumerated in the deed is described as then being in the town of St. Catherine and it is agreed by all the witnesses that the property now claimed by the plaintiff was then in Cameron, in the possession of Doak, and had been for several years previously.

There was no ambiguity in the deed. Terms were used that needed explanation to those unfamiliar with machinery of this character, and evidence was properly admitted on this

subject, and also to identify the property described, which might have applied to the articles sued for, then at Cameron, or to the articles sold to defendant then at St. Catherine.

It is difficult to see upon what grounds the plaintiff claims an estoppel in this case. It is said that the defendant's acquiescence in the sale, under the deed of trust, at which they were present, and their consent that the purchase money should be credited on their notes, estopped them from claiming or setting up any title to the articles now sued for because they were included in the deed of trust and were therefore sold to plaintiff.

This reasoning seems to be what the logicians term reasoning in a circle. The defendants did not object to the sale nor to the purchase by the plaintiff of all the articles included in the deed of trust; but they retained possession of the articles now sued for, because they were not sold, as they insisted, and this suit was brought by the plaintiff to recover that possession.

As to the offer of the plaintiff at the trial to return the property replevied, if the defendants would pay the balance due on their notes, it was entirely foreign to any issue in the case, and a matter with which the court trying the issues had no concern.

The judgment must be affirmed; the other judges concur.